## STATE ex rel. LUNDBERG v. GREEN RIVER IRRIGATION DISTRICT et al.

No. 2334. Decided December 13, 1911 (119 Pac. 1039).

1. COURTS — PRIOR DECISIONS AS PRECEDENTS — COURTS OF OTHER STATES. That a statute has been upheld by the court of last resort of a sister state, furnishes a strong-reason why the statute subsequently adopted in Utah should be upheld if attacked on the same grounds. (Page 87.)

2. CONSTITUTIONAL LAW — DUE PROCESS OF LAW — STATUTES — VALIDITY. Laws 1909, c. 74, as amended by Laws 1911, c. 53, authorizing the creation of irrigation districts, and providing for the bonding of the districts and the taxing of the property therein, is not invalid as depriving one of property without due process of law in violation of Const., art. 1, sec. 7, since any landowner is given an opportunity to be heard on objections to the inclusion of his lands within a proposed district.[1] (Page 87.)

[1] Argyle v. Johnson, 118 Pac. 487.

3. EMINENT DOMAIN—TAKING PRIVATE PROPERTY FOR PUBLIC USE—STATUTES. The purpose for which property may be taken under Laws 1909, c. 74, as amended by Laws 1911, c. 53, providing for the creation of irrigation districts, for the bonding of the districts, and for the levy and assessment of taxes, is for a public, and not a private use.[1]   (Page 88.)

4. WATERS AND WATER COURSES — IRRIGATION — ASSESSMENTS — UNIFORMITY ACCORDING TO VALUE—CONSTITUTIONAL PROVISIONS. Const., art. 13, secs. 2, 3, providing that all property shall be taxed according to value, and at a uniform and equal rate, does not apply to special assessments, and assessments authorized by Laws 1909, c. 74, as amended by Laws 1911, c. 53, authorizing the creation of irrigation districts and the levy and assessment of taxes, are special assessments based on benefits accruing to the land assessed.   (Page 88.)

5. WATERS AND WATER COURSES — IRRIGATION DISTRICTS — BONDS. On application for prohibition to prohibit the directors of an irrigation district from disposing of bonds of the district, the court must assume that all the land within the district is similarly situated, and will be capable of irrigation and improvement by the waterworks system owned by the district, to pay for which the bonds are issued.   (Page 89.)

6. CONSTITUTIONAL LAW—INVASION OF JUDICIAL POWER. Laws 1909, c. 74, as amended by Laws 1911, c. 53, authorizing the creation of irrigation districts, does not confer judicial power contrary to Const., art. 8, sec. 1, providing that the judicial power shall be vested in enumerated courts and such other inferior courts as may be established by law.   (Page 89.)

7. CONSTITUTIONAL LAW—WATERS AND WATER COURSES—STATUTES —VALIDITY. The defects, if any, in Laws 1909, c. 74, as amended by Laws 1911, c. 53, authorizing the creation of irrigation districts, must be remedied by the legislature, and not by the courts; and such defects afford no ground for holding the statute invalid.[2]   (Page 90.)

8. WATERS AND WATER COURSES — IRRIGATION DISTRICTS — ASSESSMENTS—VALIDITY. The owner of land within an irrigation district created under Laws 1909, c. 74, as amended by Laws 1911, c. 53, may seek redress in the courts resulting from any unjust assessment, and raise issues whether his land is being unjustly assessed or burdened to maintain an irrigation system through which his land cannot be irrigated nor benefited. (Page 90.)

---

[1] Argyle v. Johnson, 118 Pac. 487.

[2] Blackrock Copper Min. & Mill. Co. v. Tingey, 34 Utah, 369, 98. Pac. 180, 28 L. R. A. (N. S.) 255, 131 Am. St. Rep. 850.

PROHIBITION by John Lundberg against the Green River Irrigation District and others, directors, to prohibit negotiation of bonds of the district.

APPLICATION DISMISSED.

*W. H. Gregory* for plaintiff.

*Thurman, Wedgwood & Irvine* and *J. W. N. Whitecotton* for defendants.

FRICK, C. J.

This is an original application to this court for a writ of prohibition to prohibit the individuals named as defendants, while acting as the board of directors of the defendant Green River Irrigation District, from negotiating, selling, or disposing of certain bonds which were duly authorized by the qualified voters of said district under and in virtue of chapter 74, Laws Utah 1909, p. 144, as amended by chapter 53, Laws Utah 1911, p. 70. The defendants waived the issuance and service of an alternative writ, appeared, and filed a general demurrer to the application. The whole controversy between the parties is submitted for determination upon the application and the demurrer thereto.

It is not necessary to set forth the allegations contained in the application. It is sufficient to say that it is made to appear therefrom that all of the provisions of said chapter 74 were complied with in organizing the irrigation district, and in authorizing the issue of the bonds, the disposal of which is sought to be prohibited. It further appears therefrom that the regularity of the organization of the irrigation district has been judicially determined. The plaintiff bases his application for a permanent writ upon the assertion that chapter 74 is violative of certain provisions of our Constitution, and that said chapter is therefore void, and hence the organization of the district and the issuance of said bonds are without authority of law. It is provided in said chapter 74 that, whenever a majority of the landowners

who own the larger portion of the lands within a proposed irrigation district desire to provide for irrigation, they may present a petition to the board of county commissioners of the county in which the larger portion of the lands sought to be incorporated into an irrigation district are situated, asking that such a district be organized. The board of commissioners are required to give notice of the pendency of the petition, and upon a hearing must determine and fix the boundaries of the proposed district. The commissioners are also prohibited from excluding any lands from the proposed district that are "susceptible to irrigation by the same system of waterworks applicable to other lands in said proposed district; nor shall any land which will not in the judgment of the board be benefited by said proposed system be included in such district if the owner thereof shall make application at such hearing to withdraw the same." In some respects chapter 74 follows the provisions of the drainage law which we passed on in *Argyle v. Johnson,* 39 Utah, 500, 118 Pac. 487, and we refer the reader to that case for a more particular statement of the general provisions of the law. In view that the regularity of the organization of the irrigation district has been judicially settled, we are required to pass only upon the validity of the law.

Chapter 74 is based on what is commonly known as the "Wright Act," passed by the legislature of California and approved March 7, 1887. (See Statutes and Amendments to the codes of California 1887, p. 29.) That act was amended February 16, 1889. (Stats., etc., of Cal. 1889, p. 15.) And was further amended March 20, 1891. (Stats., etc., of Cal. 1891, p. 142.) The Wright Act is set forth in the margin of the opinion rendered in *Fallbrook Irr. Dist. v. Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369. While there may have been additional amendments to the Wright Act, yet, if any were so made, they are not material here. We have carefully compared the provisions of chapter 74 with the provisions of the Wright Act; and while the two acts differ in phraseology respecting some of the details, and while certain provisions are incorporated

into chapter 74 which are not found in the Wright Act, yet in all of the essential or fundamental features there is no substantial difference between the two acts.

If, therefore, the provisions of the Wright Act have been passed on and upheld as constitutional by the court of last resort of California, this would no doubt furnish us with a strong reason why similar provisions found in chapter 74 should also be upheld if attacked upon the same grounds. The specific objections which are urged against chapter 74 by plaintiff in substance are: (1) That said chapter violates the provisions of section 7 of article 1 of the Constitution of this state, which provides that "no person shall be deprived of life, liberty or property without due process of law." (2) That said chapter also contravenes section 22 of article 1, which is as follows: "Private property shall not be taken or damaged for public use without just compensation." (3) That said chapter also offends against sections 2 and 3 of article 13, which provide that all property shall be "taxed according to its value," and at a "uniform and equal rate." (4) That said chapter also violates section 1 of article 8, in that judicial powers are conferred upon certain persons contrary to the provisions of said section.

The first ground of attack, namely, that the plaintiff is deprived of his property without due process of law by what is contained in said chapter 74, is fully answered in the negative by the Supreme Court of California in *Irrigation District v. Williams*, 76 Cal. 360, 18 Pac. 379, and in *Hagar v. Supervisors*, 47 Cal. 222. The same question is also disposed of contrary to plaintiff's contention by the Supreme Court of the United States in *Fallbrook Irr. Dist. v. Bradley, supra*. In the latter case the holding and reasoning of the Supreme Court of California is upheld and approved. The same question is likewise determined against the plaintiff by what we said in *Argyle v. Johnson, supra*. It is true that in that case, in passing upon a drainage law which in some of its provisions is similar to chapter 74, we held that some of the provisions of the drain-

age law offended against the constitutional provision now
under consideration. The very objections which are pointed
out in that case, however, and upon which we based our con-
clusions that the drainage law was bad, are entirely obviated
in chapter 74. In said chapter the landowner is given an
opportunity to be heard, and is provided with a proper tribu-
nal to hear him, as to any objections he may have to urge
against including his lands within the boundaries of the
proposed irrigation district. It was because the drainage
law failed to give the landowner an opportunity to be heard
before a proper tribunal who had power to hear any objections
he might urge against having his lands included within the
proposed district that impelled us to hold the drainage law
invalid upon the ground that the landowner's property may
be taken without due process of law. In view, however, that
said objection is clearly obviated in chapter 74, we are com-
pelled to hold that said chapter is not vulnerable to the first
objection urged against it. In addition to the cases al-
ready cited, see, also, *Board, etc. v. Collins,* 46 Neb. 411, 64
N. W. 1086, where the question is discussed and decided
against plaintiff's contention.

Nor can objection No. 2 be sustained. That ground of
objection is fully met by what is said in the two California
cases, *supra,* and in the case from the Supreme Court of the
United States to which we have referred. The ques-
tion is also disposed of contrary to plaintiff's con-
tention in what we said in *Argyle v. Johnson, supra.*
We there held that the purpose for which property may be
taken under a drainage act formed under similar provisions
under which irrigation districts are formed is taken for a
public, and not a private, use. This objection must there-
fore be overruled.

The real ground of objection No. 3 is in effect that the
board of directors of the drainage district in providing funds
to pay the interest on the bonds issued by the dis-
trict and for other necessary purposes are by the law
in question authorized to assess, and that in the pres-
ent instance have assessed, all the lands in the district, in-

cluding the plaintiff's, at a rate amounting to $7.50 per acre.
Plaintiff contends that inasmuch as some of the lands within
the district may be of a greater value than others, and be-
cause some may be benefited to a greater extent than others
by reason of their location or otherwise, therefore the as-
sessment fixing the amount of $7.50 per acre upon all lands
within the district is necessarily unfair, unjust, and con-
trary to the rule of uniformity and equality provided for by
the constitutional provision to which we have referred. The
answer to this contention is that, in adopting the constitu-
tional provision referred to, it was not intended that it should
apply to special assessments. The assessment objected to in
this case is not one made under this constitutional provision,
but is what is usually denominated a special assessment
based upon benefits accruing to the land which is assessed.
The question now under consideration is thoroughly dis-
cussed by the author of Cooley on Taxation, where he in
effect says that apportionments by the acre as a basis for an
assessment have frequently been sustained by the courts
under circumstances in no way differing in principle from
those in this case. (2 Cooley on Taxation [3d Ed.], p.
1226, and cases there cited. See, also, *O. S. L. R. Co. v.
Pioneer Irr. Dist.,* 16 Idaho, 578, 102 Pac. 904.) The ques-
tion is also considered in some of the cases we have already
referred to.

Moreover, for the purposes of this proceeding, we must
assume that all of the lands lying within the
irrigation district are similarly situated and will be
capable of irrigation and improvement by the system
of waterworks owned by the district, and to pay for which
the bonds in question are issued. This objection must there-
fore likewise fail.

The fourth and final objection is fully met by the Su-
preme Court of Colorado in the case of *Farmers',
etc., Ditch Co. v. Agr. Ditch Co.,* 22 Colo. 513, 45
Pac. 444, 55 Am. St. Rep. 149. See, also, *Anderson
v. Grand Valley Irr. Dist.,* 35 Colo. 525, 85 Pac. 313, in
which a law based on the Wright Act is upheld as constitu-

tional against objections similar to those which are urged in this case.

The law in question in some respects is crude, and may not be the best that could be devised to attain the purposes sought to be accomplished. Such defects, if **7** there are any, however, must be remedied by the legislature, and not by the courts. In this regard we can only repeat what we said in respect to similar defects in another law under consideration in the case of *Mining & Milling Co. v. Tingey,* 34 Utah, 369, 98 Pac. 180, 28 L. R. A. (N. S.) 255, 131 Am. St. Rep. 850, namely, that such defects afford no ground for holding a law invalid.

To avoid any misconception, however, we desire to state that by what we have said we intend to and do pass upon the constitutionality of the law in question only. **8** By anything said or omitted it is not intended to foreclose any landowner from seeking redress in the courts for any legal injury he may suffer by reason of the application of the law in question. It it should develop, therefore, in the application of the law that certain lands within a certain irrigation district cannot be irrigated or benefited by the irrigation system which is owned by the district and which is constructed under the law in question, the owner of lands within the district in a proper proceeding timely commenced may no doubt have the question determined as to whether his lands are being unjustly assessed or burdened to maintain an irrigation system through which his lands can neither be irrigated nor benefited in any way. All such questions are left open for consideration and adjustment when they properly arise.

From what has been said it follows that the law in question is not vulnerable to the objections urged against it, that the writ prayed for should be denied, and the application dismissed. It is so ordered.

McCARTY and STRAUP, JJ., concur.