NORRIS et al. v. MONTEZUMA VALLEY IRR. DIST. et al.

(District Court, D. Colorado. December 2, 1916.)

No. 6532.

WATERS AND WATER COURSES ⬤⟿231—IRRIGATION DISTRICTS—POWER OF AS-
SESSMENT—DISTRICT BONDS.

Irrigation Act May 3, 1905 (Sess. Laws Colo. 1905, p. 246), providing
for the organization of irrigation districts, has for its object the authori-
zation of local improvements, to be paid for by special assessments on
the lands to be benefited, on the basis of the acre unit. It provides that
lands which will not be benefited by the improvement shall be excluded
from the district, and that those included shall be subject to an annual
assessment for the payment of the district bonds and interest, and that
for the purpose of such assessment they shall be valued at the same rate
per acre, and in case of a shortage of water it shall be prorated on the
acre basis; that the fund produced by the assessments shall be kept
separate from all other funds. *Held*, that land subject to assessment un-
der such act can be required to bear only its proportionate share of the
cost of the improvement; that when an assessment has been levied by a
county board on the lands of a district to pay the annual interest on the
district bonds, and sufficient in amount, the board has no power to re-
assess lands which have paid the assessment to make up a deficiency
caused by the failure of other lands to pay.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent.
Dig. § 320.]

At Law. Action by Mark Norris and others against the Monte-
zuma Valley Irrigation District and others. Petition by plaintiffs for
mandamus to enforce judgment. Denied.

Hayt. Dawson & Wright, of Denver, Colo., and Mark Norris, of
Grand Rapids, Mich., for plaintiffs.

Ritter & Buchanan, of Durango, Colo., W. F. Mowry, of Cortez,
Colo., and S. W. Carpenter, of Mancos, Colo., for defendants.

LEWIS, District Judge. The petitioners obtained a judgment in
this court on January 19th last for the sum of $5,415.10 on interest
coupons detached from irrigation district bonds issued by the respond-
ent District, and now apply for writ of mandamus to compel a levy
to be made for its payment. There is an answer resisting the issuance
of the writ on the grounds set up.

The Montezuma Valley Irrigation District was organized under the
act approved May 3, 1905 (1905 Session Laws, p. 246), and its powers
and purposes are set forth in that act.

On May 1st, 1907, it issued its negotiable bonds in denominations
of $500.00 each, to the amount of $795,000, and thereafter on Decem-
ber 1st, 1910, a second issue of the same denomination to the amount
of $10,000, both issues bearing interest at the rate of six per cent. per
annum, represented by semi-annual coupons attached, payable June
1st, and December 1st each year. The interest coupons on which the
judgment was obtained fell due on December 1st, 1914. Substantially
all of the interest prior to that date had been paid and the coupons

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

taken up. It thus appears that the annual interest on the total bonded indebtedness of $805,000, amounted to $48,300.

The Board of County Commissioners of Montezuma County is authorized and directed under the act to make annual levies to meet the interest payments, and in the latter part of 1913, as the act required, they made the levy to pay the interest falling due in 1914. The levy would have produced when fully discharged $43,848.88. It was anticipated on representation to the commissioners by the district board that the balance required over and above the levy to meet the interest for that year would be made up out of about $12,000, that was expected to come in from other sources provided for in the act, and that amount did actually come in, so that the levy with the additional fund from other sources exceeded in amount the interest falling due in 1914, but the levy was not all paid off. The shortage on account of failure of different land owners to pay was about $20,000. Interest coupons maturing that year are still outstanding to the amount of about $15,000, of which $225 is of the second issue and the remainder of the first issue. There is now about $1,400 in the treasury applicable to their payment.

It thus appears that the levy to meet the interest for 1914 was amply sufficient for that purpose if all payments required under it had been made.

The bonds were in form negotiable and on their face stated the title of the act (supra) under which they were issued and the date of its approval, as the statute required. To now compel another levy for the payment of the 1914 interest is to require lands that have already discharged the 1913 levy to make up the deficiency caused by a failure to realize the amount assessed against other lands in the district; and this the respondents insist cannot lawfully be done. They say that when one levy ample in amount has been made to meet the accruing interest and every step taken authorized by the law to enforce its payment, the power given under the act is exhausted, that the act is one for local improvements, that it only authorizes assessments in proportion to the benefits received, that no power is given to the respondent Board of County Commissioners or any other officer either expressly or by implication to levy a general tax on the property in the district, that by necessary implication from the terms of the act such power is withheld, that the tracts which have discharged the levy for the 1914 interest have met their whole obligation, and that to now re-assess them for the purpose of making up the deficiency caused by the failure to discharge the levy on other tracts would violate the plain purpose and requirement of the act and would take, without due process of law and without compensation, the property of the owners of the tracts that have paid.

The one and only purpose of the act is to provide for making a local improvement, the cost of which is to be assessed by the acre unit against the lands to be thereby benefited. All lands not benefited are expressly excluded from bearing any of the burden, the third section requiring their exclusion by the board. The first section exempts all ditches theretofore constructed and not owned by the district and lands watered thereby. The second section authorizes only resident free-

holders to take part in the formation of the district. By the fourth section no one who is not a qualified elector and a resident freeholder can at any time vote on any question concerning the establishment and management of the district. Section 17 reads:

"Said bonds, and the interest thereon, shall be paid by revenue derived from an annual assessment upon the real property of the district, and the real property of the district shall be and remain liable to be assessed for such payments as herein provided."

Section 19 provides:

"All lands within the district for the purposes of taxation under this act shall be valued by the assessor at the same rate per acre: Provided, that in no case shall any land be taxed for irrigation purposes under this act, which from any natural cause cannot be irrigated, or is incapable of cultivation,"

and also excludes from assessment the improvements on the lands to be assessed. By section 20 the taxes levied under the act are denominated "special taxes," and by section 21 the funds collected from the assessments to pay bonds and interest must be kept separate from all other funds and from each other. If water is insufficient for all, it must be pro rated (section 29), and by the following sections other lands that may be thereafter included shall bear their pro rata share of the entire burden.

Without more, the terms of the act are strongly conducive to support respondents' contention; but I do not regard that question as open for discussion. It is agreed that the Colorado act is substantially a copy of the California act, adopted in 1887 (St. 1887, p. 29) and commonly known as the Wright Act, and when Colorado adopted the legislation of that state she accepted and adopted the construction theretofore placed on the act by the courts of that state.

Prior to May, 1905, the Supreme Court of California in Turlock Irrigation District v. Williams, 76 Cal. 360, 18 Pac. 379, had the Wright Act under consideration in a proceeding by the district against its secretary in which it was sought to compel him to sign the district bonds authorized by the act. It was said, among other things, that the act provided for local improvements, and that it came under the rule that charges for such improvements are to be apportioned in some just and reasonable mode according to the benefits received, citing Hagar v. Reclamation District, 111 U. S. 705, 4 Sup. Ct. 663, 28 L. Ed. 569.

Again, in San Diego v. Irrigation District, 108 Cal. 189, 41 Pac. 291, 35 L. R. A. 33, that court had occasion to consider the act. The City of San Diego contended that the three thousand acres which it owned within the district were not subject to assessment under the Wright Act; that by the Constitution of the state the lands were expressly exempt from taxation. The decision was rendered in 1895, and in response to the contention the court said:

"But the assessment to satisfy which the lands in question were sold is not a tax, within the meaning of said provision of the Constitution. * * * The district, when formed, is a local organization, to secure a local benefit, to be derived from the irrigation of lands from the same source of water supply, and by the same system of works. It is, therefore, a charge upon

lands benefited, or capable of being benefited, by a single local work or improvement, and from which the state; or the public at large, derives no direct benefit, but only that reflex benefit which all local improvements confer. In Taylor v. Palmer, 31 Cal. 241, 255, the court defined the term 'assessment,' as distinguished from 'taxation,' thus: 'It is not a power to tax all the property within the corporation for general purposes, but the power to tax specific property for a specific purpose. It is not a power to tax property generally, founded upon the benefits supposed to be derived from the organization of a government for the protection of life, liberty, and property, but a power to tax specific property founded upon the benefits supposed to be derived by the property itself from the expenditure of the tax in its immediate vicinity.' "

Other western states have passed acts quite similar to the Wright Act and their courts have reached the same conclusion in this respect.

See Board v. Peterson, 4 Wash. 147, 29 Pac. 995; Lundberg v. Irrigation District, 40 Utah, 83, 119 Pac. 1039; Irrigation District v. Bradley, 8 Idaho, 310, 68 Pac. 295, 101 Am. St. Rep. 201; Board v. Collins, 46 Neb. 411, 64 N. W. 1086; and the Supreme Court of Colorado in Thomas v. Patterson, 159 Pac. 34, apparently adopts the construction given the Wright Act in this respect in its reference to Jewell v. City of Superior, 135 Fed. 19, 67 C. C. A. 623.

When a controversy involving a construction of the Wright Act reached the Supreme Court (Irrigation District v. Bradley, 164 U. S. 112, 176, 17 Sup. Ct. 56, 41 L. Ed. 369), that court, of course, accepted the construction given the Wright Act by the Supreme Court of California, and accepting that construction it decided the case in accordance with the rules applicable to assessments for local benefits. That this was the conclusion is further demonstrated by French v. Barber Asphalt Paving Co., 181 U. S. 340, 21 Sup. Ct. 625, 45 L. Ed. 879, Houck v. Little River District, 239 U. S. 262, 36 Sup. Ct. 58, 60 L. Ed. 266, and St. Louis Land Co. v. Kansas City, 241 U. S. 430, 36 Sup. Ct. 647, 60 L. Ed. 1072.

In view of the foregoing I am of the opinion that the annual levies required by the Colorado act are not to be regarded in the light of levies for general taxes, and must be considered as assessments to pay for local improvements, and that the total burden thus placed upon each acre must be reasonably proportionate to the benefits received. The owners cannot be taxed disproportionately to each other. Realty Co. v. Granite Co., 240 U. S. 55, 59, 36 Sup. Ct. 254, 255, 400, 60 L. Ed. 523. Such assessments are only sustainable when the benefits received by the property assessed are proportionate to the burden placed upon it. Ill. C. Railroad v. Decatur, 147 U. S. 190, 199, 13 Sup. Ct. 293, 37 L. Ed. 132; Hagar v. Reclamation District, supra; City v. Knowles, 17 Colo. 204–212, 30 Pac. 1041, 17 L. R. A. 135; City v. Robinson, 12 Colo. 593, 599, 21 Pac. 899; City v. Kennedy, 33 Colo. 80, 80 Pac. 122, 467; Cooley's Constitutional Limitations (5th Ed.) 617.

That act gives the county assessor and the Board of County Commissioners the power and imposes on them the duty to make the annual assessment and levy (sections 17, 18, 19, 20) only on the lands to be benefited; it provides that the bonds and interest shall be paid by revenue derived from an annual assessment upon the real property of the district which shall remain liable to be assessed for such pay-

ments as therein provided; and the assessments and levy are restricted to the property to be benefited, each acre subject to irrigation and cultivation being in the judgment of the Legislature equally benefited by the improvement. The power thus given and the manner of its exercise is specific and excludes any implication of any other or greater power. The method provided by the act for the payment of the bonds and interest is exclusive, and the court cannot require the board to depart from the method prescribed for it in the act. Stryker v. Board, 77 Fed. 567, 574, 23 C. C. A. 286.

The proposition that the passing of the coupons to judgment has not enlarged the rights of the petitioners to obtain payment, is not seriously controverted.

There is no dispute here between holders of interest coupons over the fund now on hand and in the treasury as in Thomas v. Patterson, 159 Pac. 34, though there are outstanding coupons due at the same time those that passed to judgment were due. There, as here, the assessment and levy was not made separately to pay the interest on the first and second issues, but one levy only was made to cover both. Under that case it was held that each coupon was entitled to only its proportionate share of the money in the treasury. It may be doubted whether that holding can be said to be a construction of the state statute. However, I feel that a good purpose is served in keeping the procedure uniform in state and federal court in the same jurisdiction, and will follow the practise adopted in that holding.

The testimony adduced is, I think, sufficient to enable counsel to agree on the proportionate amount that should be paid on the judgment, and time will be given until the 27th inst. for that purpose. If they are unable to agree the court will then fix the amount and the writ will issue against the county treasurer for the amount named.

The writ prayed for against the Board of County Commissioners and the County Treasurer to make assesssment and levy will, for the reasons above stated, be denied. An order to that effect may be entered.