## PETTERSON v. OGDEN CITY.

No. 6934.   Decided January 6, 1947.   (176 P. 2d 599.)

See 44 C. J., Municipal Corporations, sec. 3459; 19 Am. Jur. 338 et seq; 634.

*Derrah B. Van Dyke,* of Ogden, and *E. R. Christensen,* of Salt Lake City, for appellant.

*David J. Wilson,* of Ogden, for respondent.

WOLFE, Justice.

Ogden City appeals from a decree quieting plaintiff's title to certain property located within the City.

The property involved was purportedly sold for the 1937 general taxes thereon. The plaintiff purchased the "tax title." He also acquired a quitclaim deed from the former owner who had failed to pay the taxes. In May, 1944, he brought this action to quiet his title to the property against Ogden City which claims liens on the same for certain special improvement taxes the details of which will be given hereinafter. The City counterclaimed to have its special improvement tax liens foreclosed. The case was submitted on stipulated facts. The lower court quieted the title in the plaintiff as against the City and dismissed the city's counterclaim for foreclosure.

The pertinent facts are:

In November, 1922, Ogden City levied a special improvements tax for street paving against the property. Said tax totalled $678.35 and was made payable in 10 yearly installments bearing interest at 6% from the date of assessment and 12% after the due date thereof. If any installment was not paid when due the whole amount of the tax was to become due and payable. None of the paving tax installments had been paid at the time of this suit (May, 1944). The principal sum plus the interest then totalled $1,791.13.

In December, 1921, Ogden City levied a special improvements tax for a sidewalk against the same property. This tax was $130.67 payable in five yearly installments. It also bore 6% interest from date of assessment and 12% after due date thereof if not paid and the failure to pay any installment when due made the whole tax due and payable. The sidewalk assessment likewise was not paid and on date of suit with interest amounted to $430.67.

The general taxes on the property for 1937 were not paid. The property was purportedly sold for those taxes to the plaintiff. The parties agree that all proceedings preliminary to and in the sale for general taxes were adequate and regular except that the auditor's affidavit was not executed and affixed to the assessment book as required by Section 80-7-9, Revised Statutes of Utah 1933 (now same Section U. C. A. 1943). It is stipulated that the county

auditor performed all the acts he could have certified to had he made the affidavit required by Section 80-7-9.

Ogden City received from Weber County its proportionate share of the proceeds from the "tax sale" to Petterson.

The City took no action to collect the paving and sidewalk levies in the some 22 years intervening between the time they became delinquent and the time of this suit.

First as to the City's counterclaim to foreclose its liens:

Section 699, Laws of Utah, 1921 (now Section 15-7-48, U. C. A. 1943) makes special assessments liens on the property to be charged with the same and provides:

"* * * Such assessments shall be collected, or the property charged therewith shall be sold for such assessments and costs, in the manner provided by ordinance; and the board of commissioners * * * may provide for the summary sale by the city * * * treasurer of the property so assessed, after delinquency shall have occurred in the payment of any such tax or assessment, in the manner provided by law for sales for delinquent general taxes; *provided*, that if at any such sale no person shall bid and pay the city * * * the amount of such assessment and costs, such property shall be deemed sold to the city * * * for the amount of such assessment and costs; * * *."

The parties stipulate that the sections of Ordinance 38, Revised Ordinances of Ogden City, 1933, relevant to levying special improvement taxes, collection of the taxes, and sale of property for taxes are applicable to this case.

Sections 20-28 of that ordinance were apparently enacted pursuant to the statute which is now Section 15-7-48, U. C. A. 1943, cited and quoted in part above. The ordinance provides for notices of the tax which notices include the description of the property affected, the amount of the tax, when it is due, etc. Section 20 provides in part:

"Delinquent list and Notice of Sale. Ten days after the date of delinquency as fixed in the levy and notice of tax, or thereafter, the City Treasurer shall proceed to make up a list of all property upon which special taxes remain due and unpaid, and upon completion cause the same to be published once in some newspaper having general circulation in Ogden City. Said delinquent list shall contain a description of the property delinquent, according to lots, blocks, or parcels,

together with the owner's name or names, if known, and if not known, in lieu thereof the words 'Unknown Owner,' with the amount of the taxes due on each separate parcel, exclusive of costs, and shall be accompanied by a notice of sale substantially in the following form:
" 'Notice of Sale for Special Taxes
" 'Notice is hereby given that special taxes for (here insert briefly the purpose of the tax) are due and unpaid in the amounts and upon the lands set forth and described in the delinquent list hereto attached, and unless said taxes, including interest, together with the cost of publication are paid on or before the * * * day of * * * (here fix a day at least ten days after the date of said publication), the real property upon which such taxes are a lien will on said day be sold for said taxes, interest, cost of advertising and expense of sale, at the west front door of the City Hall, in Ogden City, Utah, beginning at the hour of twelve o'clock noon of said date and continuing until all of said property shall have been sold'."

Ordinance No. 38 does not authorize the city to resort to the courts to sue for the special assessments or to foreclose its liens for same. There is no statute or ordinance authorizing the city to sue for the assessments or to foreclose its liens by judicial procedure.

"As a general rule a statute or charter providing a special method for the enforcement of assessments is held to supersede all other methods, and where the statute provides that they should be collected as provided by ordinance, the remedy provided by ordinance is exclusive." 44 .C. J. 819, Municipal Corporation, Section 3454.

In the early case of *Crismon* v. *Reich*, 2 Utah 111, the territorial court said:

"* * * we think the rule is well settled that when ample powers and means are afforded by statute for the collection of taxes without suit, and when there is no statute providing for suit to be brought for taxes, no action can be maintained therefor."

This rule was affirmed in the recent case of *Crystal Car Lines et al.* v. *State Tax Commission*, 110 Utah 426, 174 P. 2d 984.
We think that Section 20 of Ordinance 38 quoted in part above provides an adequate procedure for the city to enforce its assessments. And, as there is no statute or ordin-

ance authorizing resort to the courts for the enforcement of its assessments we hold that Ogden City is restricted to the procedure set out in the ordinance and may not foreclose these special improvement tax liens in a judicial procedure. The city's counterclaim for foreclosure was therefore properly dismissed by the lower court.

The next question is: Did the proceedings taken in reference to the sale for general taxes cleanse the city's liens for special improvements from the property?

The appellant raises the same question as was raised in the case of *Western Beverage Co. of Provo, Utah* v. *Hansen,* 98 Utah 332, 96 P. 2d 1105, to wit: as to whether a sale for general taxes cleanses the city's liens for special improvements from the property? It asks us to overrule the decision in that case. The writer of this opinion dissented to the decision in that case as being palpably incorrect. He was joined in said dissent by another present member of this court. It is believed that if it were necessary to overrule that case, in order to decide this case, the court as presently constituted would be ready to admit the incorrectness of that decision. However, that decision has been in effect for a period of seven years. It has become a rule of property. Purchases may have been made in reliance on it. Since the legislature acts prospectively it should, if it so desires, reaffirm the plain meaning of Section 15-7-48 rather than that we disturb property rights. Secondly, from what follows it will be seen that the plaintiff's tax title was void; hence it is unnecessary to consider the case of *Western Beverage Co. of Provo, Utah* v. *Hansen.*

The making and affixing of the auditor's affidavit as provided by Section 80-7-9 is an essential step in taxing and tax foreclosure proceedings. See *Telonis* v. *Staley,* 1943, 104 Utah 537, 144 P. 2d 513; *Equitable Life & Casualty Ins. Co.* v. *Schoewe et al.,* 1943, 105 Utah 569, 144 P. 2d 526; *Tree* v. *White,* 1946, 110 Utah 233, 171 P. 2d 398.

Petterson contends that the rule in reference to the auditor's affidavit announced in the *Telonis, Equitable Life and Casualty Ins. Co.* and *Tree* cases, cited above, does not apply in this case because it is stipulated that the auditor did keep correct minutes of all acts of the county board of equalization concerning alterations in the assessment book and that all approved or directed alterations were made in the book and none were made except those authorized. In other words, all the auditor failed to do was to execute and affix the affidavit—he did the acts he would have had to do in order to make said affidavit.

In *Telonis* v. *Staley*, supra, [104 Utah 537, 144 P. 2d 518], we said:

"Moreover, the statutes expressly required that the affidavits of authentication be made. Failure to execute and attach such affidavits certainly is not a mere 'informality' within the meaning of Sec. 80-11-7, R. S. U. 1933. The Legislature evidently thought that the affidavits are of sufficient importance to insert a special provision in the statutes, Sec. 80-5-30, in order that the failure of the assessor to attach his affidavit would not invalidate the assessment."

In *Equitable Life & Casualty Ins. Co.* v. *Schoewe*, supra [105 Utah 569, 144 P. 2d 527], the court said:

"We hold that both of these auditor's affidavits [as required by Section 80-7-9 and 80-8-7] are essential, and that both must be executed and attached to the assessment roll."

In *Tree* v. *White*, supra, only one of the affidavits was not executed and attached. We held that the failure to execute and attach that one vitiated the tax deed.

In none of these cases is there even an intimation that proof of the fact that the acts to be certified to were done is sufficient without the affidavits being made and affixed.

From what has been said above it follows that the tax deed to Petterson is invalid because the auditor's affidavit was not executed and attached to the assessment book as required by Section 80-7-9, R. S. U. 1933.

Petterson contends that the city is estopped from attacking the tax deed because the city received from the

county its proportion of the money obtained from Petterson at the "tax sale" is obviously without merit. The city's action in accepting its share of the money received from the "tax sale" of the property did absolutely nothing to induce Petterson to make the purchase. The sale was already accomplished before the city received any money therefrom. So even if we were to assume a city can be estopped there is no estoppel here arising from the city's acceptance of part of the proceeds from the sale.

We come now to the questions of limitations, laches and estoppel which are presented because of the city's failure for nearly a quarter of a century to take any steps to enforce the liens.

Section 697, Compiled Laws of Utah 1917 (now Section 15-7-46, U. C. A. 1943) authorized cities and towns to make special assessments and to levy special taxes to defray the expense of special improvements. Section 699, Laws of Utah, 1921 (now Sec. 15-7-48, U. C. A. 1943) provides in part:

"Special assessments made and levied to defray the cost and expense of any work or service contemplated by the provisions of this article, and the cost of collection thereof, *shall constitute a lien upon and against the property* upon which such assessment is made and levied from and after the date upon which the ordinance levying such assessment becomes effective, which lien shall be superior to the lien of any mortgage or other encumbrance, whether prior in time or not, except the lien of general taxes, *and such lien shall continue until the tax is paid* notwithstanding any sale of the property for or account of a general or special tax." (Italics added.)

As quoted earlier in the opinion Section 20 of Ordinance No. 38 Revised Ordinance of Ogden City, 1933, (stipulated by the parties to be the ordinance governing the case) provides in part:

"Ten days after the date of delinquency as fixed in the levy and notice of tax, or thereafter, the City Treasurer shall proceed to make up a list of all property upon which special taxes remain due and unpaid, and upon completion cause the same to be published once in some newspaper having general circulation in Ogden City."

The Section provides further for a notice of sale of the property on which the taxes are liens unless the delinquencies are removed within a specific time.

It is stipulated

"That the Treasurer of Ogden City has not and the other officers of Ogden City have not up to this time [November 15, 1945] taken any proceedings whatsoever for the sale of the property * * *, for delinquent special improvement taxes."

Plaintiff urges that the failure of the city for some 22 years to take proceedings to sell the property for the taxes either destroyed the liens or prevents their enforcement because of (1) Statutes of Limitations or (2) Laches or Estoppel.

Is the special improvement tax lien barred or destroyed by a statute of limitations? It is contended that both Sections 104-2-6 or 104-2-24.10, U. C. A. 1943, bars any action to collect the taxes secured by the liens. Section 104-2-6 applies to any action "Founded upon the title to real property." Section 104-2-24.10 applies to an action "For a liability created by the statutes of this state."

We held in the recent case of *Crystal Car Line* v. *State Tax Commission*, supra, that the summary proceeding of seizure and sale provided by Section 80-10-29, U. C. A. 1943, for collecting taxes on car companies, automobiles, etc. is not an action within the meaning of the general statutes of limitations and so was not barred thereby.

As previously indicated the procedure for collecting these special improvements taxes is set out in Sections 20-28 of Ordinance No. 38, Revised Ordinances of Ogden City, 1933. That ordinance provides for a summary proceeding of notice and sale comparable with the method provided by Section 80-10-29 of the code in reference to automobiles and car companies. No judicial or quasi-judicial tribunal can be resorted to by the city to collect its taxes. On the authority of the *Crystal Car Line Case,* supra, we hold that the procedure to collect special improvements taxes as provided in Ordinance No. 38, Revised Ordinances of Ogden City, 1933, is

not an "action" within the meaning of the general statutes of limitations.

The plight of the owner who has failed to pay his special improvement taxes and allowed the interest thereon to build up, as in this case, to an amount where the total sum due approaches or exceeds the value of the property ▮ is a strong argument to the legislature to pass a special statute of limitations applicable to the situation. However, the legislature said in providing for special assessments and making them liens on the property:

"And such liens shall continue until the tax is paid." Section 15-7-48, U. C. A. 1943.

That express language plus the fact that the statutes of limitations applicable to "actions" do not apply, together with the fact that no time is fixed which gives a tax debtor repose from proceedings for the summary enforcement and collection of these taxes, forces us to the inevitable conclusion that the legislature did not intend to limit in any way the time special improvement tax liens could be enforced. Perhaps it might be well to call attention to the fact that the owner of the property may prevent the hardship of paying heavy penalties by timely paying his taxes and that any law which gave him repose might result in imposing on others the obligation of paying the sums which his taxes would supply toward payment of the warrants issued for the construction of the improvements.

Plaintiff makes two arguments for laches or estoppel. The first is that that part of Section 20 of the ordinance which says

"Ten days after the date of delinquency as fixed in the levy and notice of tax, or thereafter, the City Treasurer shall proceed to make up a list of all property upon which special taxes remain due and unpaid, and upon completion cause the same to be published once in some newspaper having general circulation in Ogden City,"

is mandatory and the failure of the treasurer to act within the time provided defeats the lien. Technically, this is not

an argument for "laches" or "estoppel" as those words are ordinarily used but rather an argument that the city has failed to comply with a mandatory statutory provision and has therefore lost its lien.

We agree that the treasurer must comply with Section 20 in order to make a valid sale of the property for special taxes but certainly there is nothing in the ■ section which requires it to be strictly followed to preserve the lien. The lien attached to the property.

"From and after the date upon which the ordinance levying such assessment becomes effective." Section 699, Laws of Utah, 1921; now Section 15-7-48, U. C. A. 1943.

The section itself indicates that the period of time after delinquency before the list of delinquents is made and notice of sale published is not vital. The section says,

"Ten days after the date of delinquency * * *, *or thereafter.*" (Italics added.)

No doubt it was intended that the city treasurer would proceed promptly to either collect the special taxes or foreclose the liens for the delinquencies. However, the city commission when it passed Section 20 of Ordinance No. 38 did not intend to defeat the liens and thereby bar collection of the special taxes in those cases where the city treasurer neglected or refused to promptly collect the tax or enforce the liens.

Plaintiff's second and principal contention for laches or estoppel is apparently based on the fact that approximately a quarter of a century has passed without action by the city to enforce its liens and because of the high rate of interest the total sum due now is over twice the value of the property involved and about three times the amount of the original taxes.

Estoppel is the device by which courts prevent their processes from being used for unjust ends. As said in Section 1044 of Lawrence on Equity Jurisprudence:

"The most direct and effective method of averting injury through legal proceedings is one applied by the court whose process is invoked, whereby the party seeking any form of judicial relief or remedy, judgment or decree, affirmative or defensive, legal or equitable, to which he is not fairly entitled, is prevented from accomplishing the result by the simple process of denying his right. He is barred or 'estopped' from using judicial machinery for unjust ends."

It is said in 19 Am. Jur. 634, Estoppel Sec. 34:

"Equitable estoppel or estoppel in pais is a term applied to a situation where, because of something which he has done or omitted to do, a party is denied the right to plead or prove an otherwise important fact."

Laches:

"is a negative equitable remedy, closely related in its nature and objective with estoppel, which deprives one of some right or remedy to which he would otherwise be entitled, because his delay in seeking it has operated to the prejudice of another." 2 Lawrence on Equity Jurisprudence 1121. See 19 Am. Jur. 338-343.

Both laches and estoppel are *bars* which in certain circumstances may be raised to defeat a right or claim a party otherwise would have. The courts refuse to give their aid to the party who has slept on his rights or who because of his actions or inaction when action was required is not fairly entitled to relief.

In this case if the city to collect its special assessment taxes had to resort to a court to foreclose the tax liens the landowner might be able to interpose defenses of estoppel or laches and thereby prevail upon the court not to give its assistance to the city. However, the city need not and indeed cannot resort to a court to foreclose the liens. It must enforce its assessments by the simple summary procedure of notice and sale as provided for in Section 20-28 of Ordinance No. 38 Revised Ordinances of Ogden City, 1933. Therefore, the ordinary applications of estoppel and laches are not applicable to this case.

To justify quieting the plaintiff's title against the city the laches of the city or the estoppel would have to be such that if the city attempted to collect the tax by the procedure

of notice and sale given it by Ordinance No. 38 a court of equity would enjoin the city from so doing.

Are the circumstances such that an equity court should enjoin the city from selling this property for its special improvement taxes?

The legislature in the statute making special assessments liens on the property (Section 699, Laws of Utah 1921; now Section 15-7-48, U. C. A. 1943, quoted above) said:

"such lien shall continue until the tax is paid."

Every person dealing with real estate knows or should know that special improvements which benefit the property are paid for by special taxes levied against the owners of the property benefited which taxes are liens on said property. When the plaintiff acquired this property from the previous owner who had failed to pay the tax he knew or should have known that the special improvement tax had not been paid and that the legislature had made the lien for said tax continue "until the tax [was] paid." He knew or should have known that interest was charged on the delinquent tax. The plaintiff has only himself to thank if he has been injured in his dealings with this property. No injunction should issue against the city to prevent its following the procedure given it by statute and ordinance to collect the tax. It follows that the plaintiff's title should not be quieted against the city.

Petterson's contention that the special assessment taxes do not constitute a lien because they are usurious and void is without merit. At the time these taxes were levied in 1921 and 1922 and when they became delinquent the maximum interest rate in Utah was 12%. The present rate of 10% was not imposed until 1935 (Laws of Utah 1935, Chapter 42). The 1935 change in the maximum interest rate had no effect on interest rates contracted for or affixed to obligations before the effective date of that law.

The case is remanded to the district court with instructions to set aside its decree and enter a new one consistent with this opinion. Costs to appellant.

McDONOUGH, J., concurs.

WADE, Justice.

I concur except as herein stated.

Notwithstanding the invalidity of plaintiff's tax title, he has acquired title thereto from the previous owner which title the court was correct in quieting unless the city now has a valid lien against the property for its special assessments. Section 15-7-48, U. C. A. 1943, provides that: 2, 5, 6

> "Special assessments * * * shall constitute a lien upon and against the property upon which the assessment is made * * * and such lien shall continue until the tax is paid notwithstanding any sale of the property for or on account of a general or special tax."

I agree with the prevailing opinion, on the grounds therein stated, that the special assessment lien has not been lost on any grounds therein discussed except the statute of limitations, on which question I reach the conclusion by different reasoning.

In *Crystal Car Line* v. *State Tax Commission*, 110 Utah 426, 174 P. 2d 984, we held that the summary proceeding of seizure and sale under Section 80-10-29, U. C. A. 1943, is not an action as that term is used in the general statute of limitations and that such proceedings is therefore not barred thereby. We held further that under Section 80-10-1, U. C. A. 1943, every tax has the effect of a judgment against the person, and that such summary proceeding was, in effect an execution on a judgment, and that under Section 104-37-1, U. C. A. 1943, which authorizes the issuance of an execution to enforce a judgment within eight years, and Section 104-37-6, U. C. A. 1943, which authorizes exceptions to that provision, and *Youngdale* v. *Burton*, 102 Utah 169, 128 P. 2d 1053, where we held that an execution on a judgment for the recovery of money may not issue after the expiration of the eight year period, that summary proceeding of seizure and sale of personal property is in effect an execution, and in the absence of a statutory provision to the contrary, may not be instituted to collect a general

personal property tax, which in effect is a judgment for the recovery of money, after the expiration of the eight year period.

Under that decision this special assessment being a tax has the effect of a judgment against the person, even though this tax was not created or authorized by that title. The provision of Section 80-10-1, supra, is that,

"every tax has the effect of a judgment."

There is no limitation to taxes levied or created under that title as there is to the next part of the same sentence in regard to liens. This indicates that although the liens therein referred to are only such as are created by that title, the taxes therein referred to are not so limited. The summary proceeding for the sale of property covered by a special assessment tax lien, provided for by the city ordinance, is in effect an execution on the tax which has the effect of a judgment, and unless there is statutory authority for the seizure and sale of this property after the expiration of the eight year period then the city is powerless to enforce its lien.

Section 15-7-48, supra, provides that the lien of a special assessment against the property upon which it was assessed,

"Shall continue until the tax is paid."

This provision is unambiguous and unequivocal, it is not limited nor the force thereof destroyed by the rest of the sentence providing that such is the case,

"Notwithstanding any sale of the property for or on account of a general or special tax."

It is true that this provision did not expressly provide that the summary proceeding under the ordinance might be instituted for the sale of the property covered by the lien after the eight year period had expired. Nor did it expressly provide that in such a case an execution might issue after such time. But the positive provision of the statute that the lien

shall continue until the tax is paid, indicates the legislative intent to perpetuate the lien and make it effective until the tax is paid. It is not an unheard of condition that a lien is said to exist without any means of enforcing the same. But it does not seem reasonable that the legislature enacted this statute intending that after the expiration of the eight year period this lien would continue but the city could not enforce it. If that were the intention, why enact the statute at all? I therefore agree that the city still has a lien against this property and it was error to quiet plaintiff's title thereto.

I also agree that the city cannot, as it attempted in its counterclaim, foreclose its lien in this action. I am not prepared to say that under all circumstances it would be barred therefrom under our decision in *Crismon* v. *Reich*, 2 Utah 111. We there merely held that,

"when ample powers and means are afforded by statute for the collection of taxes without suit, and when there is no statute providing for suit to be brought for taxes, no action can be maintained therefor."

This does not prevent a suit to collect a tax where it is shown that the statutory means for collection thereof is not ample. However, in any event, an action to foreclose its lien by the city, such as it attempted to maintain by its counterclaim, is clearly an action as that term is used in the general statute of limitations and under our decision in the *Crystal Car Line* case, supra, this tax has the effect of a judgment and would be barred in eight years after it became due under Section 104-2-21, U. C. A. 1943, which bars an action on a judgment within that time.

LARSON, Chief Justice (concurring in part—dissenting in part).

I concur in the holding that Petterson's tax title was invalid. This follows because of the holding of this court in the second Telonis case, cited in the main opinion. The present case presents an excellent illustration of why such should not be the rule, but I think it important

that the rule be fixed, and so it should remain as is, until the legislature sees fit to prescribe new laws with respect to tax titles. Since the tax title is void, and Petterson secured the title of the previous owner, the money Petterson paid to the county was in effect just a redemption from the tax sale. When Ogden accepted its shares of these moneys it received them therefore as the city's share of general taxes paid. It is evident, therefore, that no estoppel could be invoked against the city because of the receipt of this money.

The special taxes involved in this action are controlled as to their levying, collection, and sale of property by the ordinances in force in Ogden City in 1921 and 1922. Since the parties stipulated that Ordinance 38, Revised Ordinances of Ogden City, 1933, were applicable to this case, we must assume that the 1933 ordinance is a re-enactment of the ordinance as it existed in 1921 and 1922. Otherwise, the stipulation would be ineffective and the old ordinance must need be in evidence.

I agree that we should not disturb the holding in the *Western Beverage* case, for the reason's stated by Mr. Justice Wolfe, and also for the reason that I think that case correctly lays down the law. I agree that special improvement district taxes must be collected in the method prescribed by statute and ordinance and not otherwise. This is because the tax is expressly made a lien on the land with power of sale and there is therefore no reason for any other method of collection. There may be a different rule as to personal property tax, as the writer indicated in his concurring opinion in the *Crystal Car Lines* case. It follows that I agree that proceedings for collection of special improvement tax under ordinances such as these are not actions within the statutes of limitations.

As to the holding of the opinion which recognizes the right of the city to enforce and collect these taxes after they have been delinquent 23 years with no effort be made to collect them, I must emphatically dissent. On those matters I think the opinion certainly carries a laboring oar of

stringent and rigid interpretation of language and technical reasoning which I think would never be allowed to a private individual or corporation. The statute and the ordinance both provide for a prompt action to recover these taxes— even hastens the maturity date of all future annual installments upon the first default and it provides that "Ten days after the date of delinquency"—the City Treasurer shall make up the list of delinquencies and proceed to advertise the property for sale. Reasons for this promptness are evident and abundant. Special improvements are financed by special improvements warrants given to the contractors. Since these warrants must be met each year, promptness of payment of taxes is essential. If they are not paid the city is under the necessity of redeeming the warrants from general revenues or of impairing its credit standing. Such is not fair to the people in the district who pay, nor is it fair to citizens generally, who must pay extra or have the city credit impaired, which will be reflected in all future undertakings and improvement costs. Again the policy approved by the prevailing opinion is an invitaion to city officials to play favorites, and in effect relieve some persons from payment of special improvement taxes. It is also an invitation for laxity on the part of city officials whereas the statute and ordinance evidences the intent to require the utmost good faith and efficiency of city officials. Furthermore, there should be a rest period beyond which one may assume that city officials have done their duty and no stale claims will be urged against them. The opinion has the effect of putting special improvement taxes on a much higher and preferred plane to general tax liens.

I concur fully in what is said on this subject by Mr. Justice Pratt in his opinion.

PRATT, Justice (concurring in part—dissenting in part)..

I concur with the prevailing opinion to the following extent: That the city has no remedy by court action to enforce its special tax lien. That there is a fatal

defect in plaintiff's tax title. And that the city is not estopped to question plaintiff's tax title.

In view of the fact that we hold plaintiff's tax title defective, I see no reason for expressing any opinion upon the merits of our previous decision in the *Western Beverage Co. of Provo, Utah* v. *Hansen*, which involved the effect of a valid tax title, and which is cited in the prevailing opinion. I express no opinion upon the merits of that decision at the present time.

I am not convinced that any procedure for the foreclosure of taxes in this state, whether provided by statute or by ordinance was enacted with the thought in mind that time is of no importance in the collection of those taxes. Many sections are very meticulous as to the element of time. Many of our decisions have been founded upon errors in the time elements. If then a particular section does not specify a definite time to act, it would seem that at least it contemplates a reasonable length of time, unless there are provisions clearly indicating the contrary. The fact that it is provided that a lien shall remain a lien until it is paid, is not an invitation to public officials to throw the tax collecting procedure out the window and sit complacently by hoping that some one will buy the property from the owner and pay the taxes before the tax burden has become so heavy that no one will touch the property. It doesn't take argument to support a conclusion that inactivity for some 20 years more or less is an unreasonable length of time. A mere comparison with the maximum time elements in the proceeding for the collection of general taxes will convince one of its unreasonableness.

I don't think that the city's special tax lien should be held enforceable at this late date.