287 P.2d 884

DENVER & RIO GRANDE WESTERN
RAILROAD CO., Respondent,

v.

CENTRAL WEBER SEWER IMPROVE-
MENT DISTRICT, a municipal corpo-
ration, et al., Appellants.

MOUNTAIN STATES TEL. & TEL. CO.,
Respondent,

v.

CENTRAL WEBER SEWER IMPROVE-
MENT DISTRICT, a municipal corpo-
ration, et al., Appellants.

UTAH POWER & LIGHT CO., Respondent,

v.

CENTRAL WEBER SEWER IMPROVE-
MENT DISTRICT, a municipal corpo-
ration, et al., Appellants.

BAMBERGER RAILROAD COMPANY and
Bamberger Transportation Co.,
Respondents,

v.

CENTRAL WEBER SEWER IMPROVE-
MENT DISTRICT, a municipal corpo-
ration, et al., Appellants.

SOUTHERN PACIFIC CO., Union Pacific
Railroad Co., Oregon Short Line Railroad
Co. and Ogden Union Railroad & Depot Co.,
Respondents,

v.

CENTRAL WEBER SEWER IMPROVE-
MENT DISTRICT, a municipal corpo-
ration, et al., Appellants.

MOUNTAIN FUEL SUPPLY CO.,
Respondent,

v.

CENTRAL WEBER SEWER IMPROVE-
MENT DISTRICT, a municipal corpo-
ration, et al., Appellants.

Nos. 8171–8176.

Supreme Court of Utah.

Sept. 23, 1955.

VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, for D. & R. G. W. R. Co. and Mountain States Tel. & Tel. Co., respondents.

Frank J. Allen, Salt Lake City, for Utah Power & Light Co., respondent.

Skeen, Thurman, Worsley & Snow, Salt Lake City, for Bamberger R. Co., and Bamberger Transp. Co., respondents.

Bryan P. Leverich, M. J. Bronson, A. U. Miner, Howard F. Coray, Marvin J. Bertoch, Ray, Quinney & Nebeker, Salt Lake City, for Southern Pac. R. Co. et al., respondents.

Ray, Rawlins, Jones & Henderson, Salt Lake City, for Mountain Fuel Supply Co., respondent.

Wallace, Adams & Peterson, Ogden, for appellant.

HENRIOD, Justice.

Consolidated appeal by a sewer district from 6 judgments which excluded certain real and personal property (of gas, phone, power and 3 railroad companies) from the district and thus relieved it of the tax burden provided for in Chap. 32, Laws of Utah, 1951, the pertinent sections of which appear below, matters deemed unimportant for this case [1] having been deleted, and italics supplied. Affirmed, no costs.

1. *Sec. 2:* "Any board of county commissioners * * * may by resolution declare that the public health, convenience and necessity requires the creation of an improvement district. Such resolution shall define the *boundaries* thereof. * * *. Upon presentation * * * of a petition signed by * * * 25% or more of the *owners of real property* * * * proposing the * * * district it shall be the duty of the board * * * to establish such * * * district."

*Sec. 3:* "After such resolution shall have been adopted * * * said board shall give notice of its intention to establish such district, which notice shall define *the area* * * * and * * * *boundaries* thereof * * *. Said notice * * * shall designate a time * * * and * * * place, at which * * * *all interested parties* may appear * * and be heard * * * in support of or

The statute allows creation of water and sewer districts by county commissions. A general tax (not a special assessment) is leviable against all taxable property in the district to accomplish the district's purposes, (after any exclusions of property shown not to be benefited directly, have been effected). The 6·protesting utilities own rights of way, rolling stock, communication lines, real estate beyond the rights of way, improvements and personal property connected with each as outlined in their written protests, filed before the creation of the district, the utilities variously claiming that property such as transmission lines, rolling stock and rights of way would not be benefited directly by the sewer. They conceded, however, that some of the property that they listed, such as real property owned by them outside of the rights of way and the improvements and personal property thereon, would be benefited directly by the sewer project, suggesting and agreeing

that such property was includable and taxable in the district. Although the parties stipulated that the sewer generally would benefit the area included in the district, counsel for the sewer district did not contend in their briefs that the specific property claimed to be excludable, and situate in the area claimed not to be benefited, such as transmission lines, rolling stock, etc. itself would be benefited directly, and it is not unreasonable to assume that their failure so to contend was natural and inescapable since it appears reasonably certain that such property or its owners hardly could be benefited directly by sewer facilities incident to the project.

It does not appear otherwise from the record than that the county commission arbitrarily concluded that the property, subject of protest and claimed exclusion, would be benefited directly by, should be included in, and not eliminated from the district, i. e., that all such property was

in opposition * * *. *Any taxpayer within said district may* * * * *protest* * * * *in writing, signed by the taxpayer* * * *. If* * * * *protest* * * * *be filed, signed by more than twenty-five percent (25%)* * * *of the real property owners* * * *the district shall not be established.* * * * *If any* written protests are filed and * * * represent less than twenty-five percent of the * * * valuation *of the real property* * * * the resolution * * * shall contain a recital to that effect * * *. In such resolution * * * *the board* * * * *shall eliminate* * * * *any*

*property originally included therein, but which it shall determine will not be directly benefited* * * *. Any property owner who* * * * *filed a written protest,* * * *and whose property has been included* * * *may* * * * *apply to the district court* * * *for a writ of review of the actions of the board* * * *but only upon the ground that his property will not be directly benefited by the* * * * *improvements* * * *. A failure to apply for such writ* * * *shall foreclose all owners of ·property within said district* * * *from the right to further object thereto."*

taxable. The district court rejected the commission's conclusion.

Eight errors are urged, which may be categorized into 3 basic complaints: 1) That on writ of review, only the certified evidence and record are reviewable, and no evidence is adducible in addition to that shown in the record; 2) That only realty is excludable, but personalty is not, though the latter is taxable; and 3) That the legislature did not intend to use the word "directly" in Sec. 3 of the 1951 act.

■ As to 1): Ordinarily on writ of review the certified record alone is examinable.[2] Not so, however, where the record and determination of the commission or board are unsupported by some kind of reasonably substantial proof. In such event the judiciary may awaken to question their warrant, and in doing so, may receive, examine and weigh evidence, if necessary, as it did here on stipulated facts, to the end that due process guarantees will maintain.[3] We cannot subscribe to the view that the utilities, in failing to insist on introducing evidence before the commission other than their written protests, which generally described the property claimed to be excludable because not benefited, waived any right of review. There is nothing in the statute that says the respondents had to present evidence at the hearing. The only requirement up to that point was that, in order to protect one's interest, he must have filed a written protest, objecting to the creation of the district. Here the respondents filed written protests, containing their objections, which embodied about all they could have presented orally at a hearing, and to permit a commission arbitrarily to ignore such contentions, and hold that a judicial review of the commission's findings and conclusions could not be · had, would be to render impotent the concepts of due process, which require that he who deigns to deny such process, must afford· it,— particularly where ·he, who is denied it, reasonably has followed or attempted· to follow the language of a statute ·which at best, is not the product of the clearest draftsmanship.      ···

■ We do not agree with the sewer district that the review can extend no further than to examine the record below, nor do we agree with the utilities that the act contemplates a trial de novo. The

2. Higgs v. Burton, 58 Utah 99, 197 P. 728; Rule 65B(e), Utah Rules of Civil Procedure.

3. Interstate Commerce Comm. v. Louisville & N. R. Co., 227 U.S. 88, 91, 33 S.Ct. 185, 57 L.Ed. 431; New England Telephone & Telegraph Co. v. Dept. of Pub. Utilities, 262 Mass. 137, 159 N.E. 743, 56 A.L.R. 784; Baltimore & O. R. Co. v. United States, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209. See also Federal Administrative Procedure Act, 60 Stat. 237, 5 ·U.S.C.A. § 1001 · Pub.Law 404, 79th Cong., June 11, 1946, Sec. 10 (e).

nature and extent of the review depends on what happened below as reflected by a true record of the proceedings, viewed in the light of accepted due process requirements. If the record made revealed the fact that the commission had conducted a hearing, taken evidence, heard witnesses under oath and otherwise had proceeded in accordance with such due process requirements,[4] and had the facts either supported or negatived the commission's findings and conclusions, the reviewing court could have examined only the record before it, to determine if the commission regularly had pursued its authority, or had abused its discretion. But where, as here, there is nothing to review but an ipse dixit, due process would be denied if the reviewing Court could not get at the facts. To hold otherwise, invites rule by men, not laws, and would lead to such absurd results as that which would maintain if a commission, desiring a sewer in one part of the county, forced much of a project's cost upon industrial plants, persons or utilities by creating an irregular district with territorial tentacles reaching out to envelope property, though neither it nor its owners conceivably could enjoy the plumbing,—followed by the simple device of holding an unrecorded and meaningless hearing.

■ As to 2): An examination of Sec. 3 of the act makes it apparent that two classes of property owners are contemplated when provision is made for a) *Any taxpayer* to protest and for b) *real property owners* to protest,—all found in the same paragraph. To argue that "any taxpayer" means only "real property owner" is to blind oneself to the words and realities. If the act permitted only real property owners to register a protest, arbitrarily denying such right to taxable personal property owners, a constitutional question might present itself. We can see little justice under a statute which taxes both real and personal property, and whose language fairly may be interpreted to relieve both real or personal property from taxation if either is not directly benefited from a proposed sewer project, if a person who owns and simply stores a $50,000 piece of hauling equipment could get no relief from the taxes imposed by the statute, whereas one who owns an acre of marsh land worth $100.00 completely is immune from payment of the taxes. We believe that either has the right, under the comparatively short statute of limitations involved in this case,—30 days after establishment of the district,—to have a review by the judiciary, and be relieved of the taxes, if it is shown that neither the $50,000 piece of hauling equipment nor the $100.00 acre of marsh land could be benefited directly by the sewer.

4. 42 Am.Jur. p. 449, Sec. 116.

We must hold legislation constitutional if possible, and we believe and determine that, from the express wording and interdictions of the act, it can be concluded reasonably and fairly that the legislature had in mind burdening all taxable property in the district, if necessary, real or personal, with the cost of the project, unless it is shown by protest timely registered, or by review timely taken that such real or personal property would not be benefited directly by the improvements, in which event such property should be excluded from the district and remain nontaxable. We hold to all this, with great respect for the earnest and able arguments of the district's counsel anent the relationship of words and phrases in the title and body of this loose and not too clear legislation. We express no opinion as to any other statute. We believe the record made by the commission and certified to the district court so lacking in information and fact as to have justified the district court in receiving evidence to determine whether the claimed property would or would not be benefited directly by the improvement, and having done so and found there would be no such benefit, there being substantial evidence to justify such conclusion, we will not disturb the judgment. If, under the particular circumstances of this case, there could have been no inquiry into the facts other than reflected in the commission's record, we are of the opinion the respondents would not have been afforded the constitutional guarantees of the due process clause.

As to 3): We believe the word "directly" in Sec. 3 of the act was not used unintentionally.

We agree with counsel that in cases where a person resides in an area where a general tax is extant, he may not complain of a tax imposed upon him where he is not personally benefited, where such tax is imposed for the general benefit of his community.[5] But where there is a specific statutory provision for the *exclusion* of certain property from an improvement district, and hence an elimination of the tax as to such property, those authorities are applicable only as to the area remaining in the district after property proven to be unbenefited directly, by timely protest, has been excluded, and where he who has made no such timely protest required by the act, complains that his property will not benefit by the improvement.

CROCKETT and WORTHEN, JJ., concur.

McDONOUGH, C. J., concurs in the result.

WADE, J., dissents.

5.  Lehi City v. Meiling, 87 Utah 237, 48 P.2d 530; Cooley, Taxation, Vol. 1, 4th Ed., p. 214.