346 P.2d 155

David G. PEARSON and Elva P. Pearson, Plaintiffs and Appellants,

v.

SALT LAKE COUNTY, a municipal corporation, Board of County Commissioners of Salt Lake County and Lamont B. Gundersen, Edwin Q. Cannon and Abram Barker, Members of the Board of County Commissioners of Salt Lake County, Defendants and Respondents.

No. 9042.

Supreme Court of Utah.

Nov. 2, 1959.

Owen & Ward, Salt Lake City, for appellants.

W. T. Thurman, Grover Giles, Salt Lake City, for respondents.

WADE, Justice.

Plaintiffs seek to have declared invalid the creation and operation of Special Improvement District No. 1, of Salt Lake County. They claim it violates the laws and Constitution of this State and of the United States. The creation and operation of this

District were under Chapter 7, Title 17, U.C.A.1953, as amended by the Laws of Utah for 1957, which repealed the existing sections and enacted new sections. Plaintiffs also ask for injunctive relief. The trial court found no merit to their claims and plaintiffs appeal. They argue nine grounds for reversal.

Plaintiffs are residents and real property owners in the district which includes both sides of the Murray-Taylorsville Road (48th South) between the west side of Redwood Road the east side of 11th West Street. Defendants by the use of this district are proceeding to improve this road. They propose to issue negotiable bonds to be paid for from special assessments to become a lien against the adjoining real property and a special property contingent tax against the real property of the district sufficient to assure the prompt payment of installments of the principal and interest of the bonds as they become due.

■ Defendants propose to make four separate and distinct improvements, consisting of curbs, gutters, sidewalks and driveways. Many of the adjoining landowners will have only a part of these improvements installed in front of their property, with a different set of these improvements installed in front of other adjoining property. Sections 13 and 14, Chapter 7 of Title 17 indicate that the amount assessed against an owner's property becoming a lien thereon in the first instance shall not constitute "more than his proper proportionate share of the total cost of improvements." Plaintiffs argue that under these facts it is impossible to determine the proper proportionate share of each adjoining property owner. This argument is without merit. Each separate improvement is figured separately the same as it would have been had there been a separate district and separate tax for each improvement. Each owner is assessed the same proportionate amount as the total of each separate improvement placed in front of his property bears to the total assessments for each of such improvements for all adjoining property, and no adjoining landowner is assessed for an improvement which will not be constructed in front of his property. So no landowner is required to pay more than his proportionate share of the improvements.

■ Plaintiffs next contend that the assessment for a driveway is for a private as distinguished from a public purpose and therefore is unconstitutional. These driveways are to be installed within the boundaries of the roadway on public property. They are largely for private benefit. However, the public generally may use them to enter the private property to turn cars on the highway and for other conveniences. This system allows the county to supervise the construction in accordance with its pub-

lic policy and meet its requirements for drainage, safety and appearance. So we hold that installing these driveways is a public improvement.

Section 17–7–26, U.C.A.1953, enacted by the Laws of Utah for 1957, provides:

"Whenever it shall appear that the special assessments pledged to the payment of any special improvement bonds issued hereunder have not been or will not be collected in an amount sufficient to assure the prompt payment of all principal and interest due on such bonds, the board of county commissioners shall levy on all real property within the issuing improvement district a special tax in an amount sufficient to prevent such default, or if such default shall have occurred, sufficient to remedy such default. The proceeds of such tax shall be deposited in a special improvement guaranty fund applicable only to the bonds of such district and shall be used solely for the purpose of paying principal and interest on the bonds of the district as to which there would otherwise be a default. Any money remaining in such fund after all principal and interest due on such bonds shall have been paid shall be rebated to the then owners of the real property in such district in the same proportions as the aggregate amount of such taxes previously paid by the then and former owners of each such piece of real property bears to the total taxes paid by the owners of all real property in such district under the provisions of this section over the life of the bonds."

Section 3, Article XIV of our Constitution provides:

"No debt in excess of the taxes for the current year shall be created by any county or subdivision thereof, * * * unless the proposition to create such debt, shall have been submitted to a vote of such qualified electors as shall have paid a property tax therein, in the year preceding such election, and a majority of those voting thereon shall have voted in favor of incurring such debt."

Plaintiffs contend that the provision for levying this special tax on the real property within the district creates a debt in excess of the taxes for the current year contrary to the constitutional debt limitation.

■ It is only a remote contingency that any such assessment will be necessary and no possibility that more than a small portion of the bonds will be paid therefrom. The individual landowners of the district are principal debtors with a lien for the front footage improvements against each parcel of land. Only when it shall appear that the collections from such liens will be insufficient to assure the prompt payment of all installments of principal and interest when

due is there any authority or obligation to levy this tax and then the Commission must levy sufficient tax to prevent or remedy such default. Until this occurs there can be no debt under this provision against anyone. And when it occurs the Commission must levy sufficient tax against the real property within the District for the current year to prevent or remedy such default. So there can be no debt under this provision in excess of the taxes for the current year, for the Commission must levy a special assessment for the current year sufficient to pay the only obligation which this statute creates. In accordance with this result in Wicks v. Salt Lake City,[1] in answer to a similar contention, we said:

> " * * * To hold that a solemn act of the Legislature intended to support and maintain the credit of the municipalities of the state is unconstitutional on some vague theory that in its operation there is the barest possibility of a contingency arising in which there may be an infringement of the Constitution is going further than any case which has heretofore come to my observation."

The only difference between this case and the Wicks case is that there the contingent assessment was authorized against all property in the city, while here only a special assessment against the real property of the district is authorized. If a general levy against all the property within the city did not create a city debt in violation of our constitutional debt limitation this special levy against the real property within the district cannot. There are many decisions from other states which support this holding.[2]

■ Our conclusion that this bond issue creates no debt of Salt Lake County eliminates plaintiffs' next contention that such debt is in violation of Section 4, Article XIV of our Constitution. Everyone agrees that a special improvement tax levied only as a lien against the adjoining real property is not a county debt. Under our holding that this contingent liability is not a debt against the county, all possibility that this bond issue can create a county debt contrary to our Constitution is eliminated.

■ Plaintiffs next contend that this contingent tax under Section 17-7-26 U.C. A.1953 against only real property of the district violates Sections 2 and 3 of Article XIII of our Constitution.

1. Wicks v. Salt Lake City, 1922, 60 Utah 265, 208 P. 538, 541.
2. Lillard v. Melton, 103 S.C. 10, 87 S.E. 421; Brownlee v. Brock, 107 S.C. 230, 92 S.E. 477; McIntyre v. Rogers, 123 S.C. 334, 116 S.E. 277; Marks v. City of Mandan, 70 N.D. 474, 296 N.W. 39; Kelly v. City of Sunnyside, 168 Wash. 95, 11 P.2d 230; Hansen v. City of Havre, 112 Mont. 207, 114 P.2d 1053, 135 A.L.R. 1278; American Co. v. City of Lakeport, 220 Cal. 548, 32 P.2d 622.

Section 2, Article XIII provides:

"All tangible property in the state, not exempt under the laws of the United States, or under this constitution, shall be taxed in proportion to its value, to be ascertained as provided by law. * * *"

Section 3, Article XIII provides:

"The Legislature shall provide by law a uniform and equal rate of assessment and taxation on all tangible property in the State, according to its value in money, and shall prescribe by law such regulations as shall secure a just valuation for taxation of such property, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its tangible property."

In State ex rel. Lundberg v. Green River Irrigation District [3] we said:

"* * * The answer to this contention is that, in adopting the constitutional provision referred to, it was not intended that it should apply to special assessments. The assessment objected to in this case is not one made under this constitutional provision, but is what is usually denominated a special assessment based upon benefits accruing to the land which is assessed * * *."

In State ex rel. Ferry v. Corinne Drainage District [4] we said:

"* * * There is a well-recognized distinction between a tax imposed for state, county and municipal purposes and a special assessment levied for local improvements. The one is made for revenue from which no special benefits are derived and the other is for local improvement the benefits of which to the land assessed is equal to or greater than the cost of such improvement. * * *

*    *    *    *    *    *

"This doctrine is based on the same principle that upholds the right to levy assessments for the construction of sewers and the paving of streets and sidewalks. * * *"

This is a special improvement contingent tax levied against the real estate included in the district to assure the prompt payment of all principal and interest installments as they accrue on the bonds secured by the special assessment against the individual parcels of land in the district. Such assessments are made a lien against the individual parcels upon default. Every parcel which will not be benefited by the improvements must be eliminated from the district. This is a special assessment levied on real property only which will be bene-

---

3. State ex rel. Lundberg v. Green River Irrigation District, 1911, 40 Utah 83, 119 P. 1039, 1041.

4. State ex rel. Ferry v. Corinne Drainage District, 48 Utah 1, 156 P. 921, 924.

fited by the improvements to be made. It does not violate the above constitutional provisions for such provisions have reference only to general taxes assessed for general governmental purposes and not to pay for special improvements which benefit the property assessed.

Plaintiffs next argue a number of related points. They contend (1) that the contingent ad valorem tax is made to pay for the default of some landowner of the district, (2) that thus it is a levy to pay a private debt and not for a public purpose. (3) that the parties not in default are required to pay more than their proportionate share for the improvements and more than the benefit to their lands from the improvements.

As previously pointed out this tax is only remotely contingent and all the improvements are for a public purpose. The fact that it is made necessary by the default of some adjoining landowner does not make the levy for a private purpose. The tax is levied to insure the prompt payments of negotiable bonds and thus make the public improvements possible at a reasonable charge. Such a tax is for a public purpose.[5]

The special assessment which becomes a lien against adjoining lands is not necessarily for the full amount of the benefit to the adjoining lands. Usually the benefits from improvements are greater than they cost. The adjoining landowner who pays promptly the lien assessment and the contingent assessment temporarily pays more than his proportionate share of the costs of the improvement. However, when the defaulting payments are collected by foreclosure of the liens or otherwise, such overpayment, according to Section 17-7-26, should be rebated.[6] There is nothing unconstitutional in this situation.

Plaintiffs next contend that the contingent assessment is authorized without notice or hearing on whether the proposed improvements will benefit the land in violation of the "due process" clauses of the United States and Utah Constitutions.[7] We have previously held that this is a special assessment. Does due process require an additional notice and hearing on benefits to the land before this tax can be assessed? These statutes require that the resolution creating the district "shall identify each tract, block, lot, or parcel of land specially benefited by such improvement * * * which tracts, blocks, lots and parcels of land shall collectively constitute the district";[8] with notice of a hearing on whether each

5. Wicks v. Salt Lake City, 60 Utah 265, 208 P. 538, cited in note 1 above.
6. See Section 17-7-25 and 26, U.C.A.1953 as amended by Laws of Utah, 1957 quoted above.
7. See Fourteenth Amendment to the Constitution of the United States and Section 7 of Article I of the Constitution of Utah.
8. See Section 17-7-12, U.C.A.1953 as amended by Laws of Utah, 1957.

parcel listed "will be benefited by the proposed improvement to the amount of the proposed assessment against" such property;[9] and that after the hearing the board "shall make such corrections in the proposed list of assessments [assessments which will become a lien against the listed property] as it may consider just and equitable. Such corrections may eliminate one or more pieces of property from the district or may decrease the amount of the assessment proposed to be levied against any piece of property."[10] By such hearing the board may reduce the assessment against any piece of property and eliminate from the District property which it finds will not be benefited by the improvements.

This is a remotely contingent special ad valorem assessment against the real property constituting the district after the board has found upon notice and hearing that each piece of property will be benefited to the extent of the proposed special lien assessment against such piece of property. The landowner who does not default in the payment of the original assessment against his property is entitled to a rebate of his payments under this assessment when the defaulting assessments are collected. Such an assessment does not violate the due process clauses.

In all the cases relied on by plaintiffs a special assessment was provided against each individual parcel of property to pay for such parcel's proportionate share of the cost of the improvement.[11] Such assessment will become a lien on the adjoining parcel and is limited to the benefit of the improvement to such piece of land. These cases are like the first assessment in this case but different from this contingent assessment in that it is an ad valorem assessment against the real property of the district with no lien until after default.[12] Although the property which the board finds on the hearing will not benefit by the improvement must be eliminated from the district the amount of this tax is not necessarily determined by the benefit each lot will receive from the improvements. Also, as previously noted, the proceeds of such tax must be deposited in a special guaranty fund to be used only in payment of the bonds of this district and any money remaining after payment of the bonds must be rebated to the owner of the land. Under such cir-

9. See Section 17-7-13, U.C.A.1953 as amended by Laws of Utah, 1957.
10. See Section 17-7-14, U.C.A.1953 as amended by Laws of Utah, 1957.
11. Bellingham Bay & British Columbia R. Co. v. City of New Whatcom, 1899, 172 U.S. 314, 19 S.Ct. 205, 43 L.Ed. 460; Argyle v. Johnson, 1911, 39 Utah 500, 118 P. 487; Harmon v. Bolley, 1918, 187 Ind. 511, 120 N.E. 33, 2 A.L.R. 609; Davidson v. City of New Orleans, 1877, 96 U.S. 97, 24 L.Ed. 616; Hagar v. Reclamation Dist., 1884, 111 U.S. 701, 4 S.Ct. 663, 28 L.Ed. 569; Bigler v. Greenwood, 1953, 123 Utah 60, 254 P.2d 843.
12. See Harmon v. Bolley cited in note 11.

cumstances and provisions due process does not require a further notice or hearing before levying this assessment.[13]

▮ Plaintiffs' contention that the priority of the assessments as provided by Section 17–7–19, U.C.A.1953, as amended is invalid is without merit. That section in part provides:

"Special assessments levied hereunder shall rank on an *equality* with taxes levied against the property assessed by the state, the county and any taxing district thereof and *no sale of property for the nonpayment of taxes or other special assessment shall extinguish the lien of other than the taxes or special assessments for the nonpayment of which such sale is made.* \* \* \* The lien of special assessments levied hereunder shall be superior to all other liens against the property assessed *except that it shall be on a parity with the lien of ad valorem taxes and the lien of other special assessments and shall be effective from and after the date upon which the notice of levy is published.*" (Emphasis ours)

This provision is clear and unambiguous. It states that the assessments under the provisions of this chapter shall rank on an equality with taxes levied against the property by the state, the county and any taxing district thereof. It then emphasizes this equality by stating that no sale of the property for the nonpayment of taxes or other special assessments shall extinguish the lien of other than the taxes or special assessments for the nonpayment of which such sale is made. In other words, the sale for one tax shall not extinguish the lien of other taxes because they are equal. It then states that this tax lien shall be superior to all other liens against the property except it shall be on a parity with the lien of ad valorem taxes and the lien of other special assessments and shall be effective from and after the date upon which the notice and levy was published.

Plaintiffs argue that a provision making the lien of a special assessment equal to the lien of a general tax for governmental purposes is invalid. They cite no constitutional provision or other authority to that effect. We have found no such authority.

13. For a discussion of a general levy to make up a deficiency to pay special improvement bonds see Harmon v. Bolley, note 11 and Wicks v. Salt Lake City, in note 1, where the court without discussing "due process" approved a contingent levy against all the property of Salt Lake City to insure the prompt payment of special lighting improvement bonds and Denver & Rio Grande Western R. Co. v. Central Weber Sewer Improvement Dist., 1955, 4 Utah 2d 105, 287 P.2d 884, where we tacitly approved such a levy against the whole district to pay special improvement bonds but eliminated the railroad property from the district on a showing of no benefit, without noticing or a discussion of this problem.

Plaintiffs rely on Robinson v. Hanson, and Western Beverage Co. of Provo, Utah v. Hansen.[14] The Robinson case merely holds that the lien of a general governmental purpose tax is superior to a special improvement tax lien absent something in the statute to indicate otherwise. In the Western Beverage case the majority of this court construed the language of the statute there involved to mean that the general tax lien was superior to the special tax lien. In other words, we reached the result we did from a construction of the wording of the statute involved, not on the grounds that the legislature is powerless to make such liens equal. Two judges dissented from the construction placed on the statute there involved. In Petterson v. Ogden City [15] there is comment to the effect that the then majority of the court agreed with the construction placed on that statute by the dissenting opinion in the Western Beverage case, but the court did not pass on that construction because it held that the general tax sale was invalid.

Here we have a different statute which was obviously made to make these liens equal bearing in mind the cases above discussed. This amendment was enacted about ten years after the decision in the Petterson case.

Plaintiffs' further contention that these statutes are so ambiguous that they are unenforceable is also meritless.

Judgment affirmed. Costs to respondents.

McDONOUGH and CALLISTER, JJ., concur.

CROCKETT, Chief Justice (concurring specially).

I concur in affirming the judgment adverse to the contentions of the plaintiffs. In doing so I call attention to the fact that these plaintiffs signed a "Request For Driveway" which contained, inter alia, a request that the County Commissioners, acting for the Special Improvement District, include their property; and further, that they agree to pay the amount of the special assessment and waive any right to protest against it. This, I think, deprives plaintiffs of any standing to raise due process of law questions as to them in regard to notice and opportunity to be heard.

About the pertinent statutes, I desire to make the following observations: The provision for notice, hearing and opportunity to protest may be entirely meaningless unless the protest could prove effective under proper circumstances. How this

14. Robinson v. Hanson, 1929, 75 Utah 30, 282 P. 782; Western Beverage Co. of Provo, Utah v. Hansen, 1940, 98 Utah 332, 96 P.2d 1105.

15. Petterson v. Ogden City, 1947, 111 Utah 125, 176 P.2d 599.

could be accomplished is not spelled out. The protest seems to be limited to the questions whether the owner's property will be benefited and whether the assessment constitutes more than his proper share of the total cost. The act only authorizes the Commission to eliminate property not properly included, or to decrease an assessment, and then provides that the Commission, "shall direct that proceedings for the making of the improvement and levy of the assessments be continued." [1] But there is no express provision for the discontinuance of the project, no matter how many or how valid the objections that may be voiced. It therefore appears to me that under the literal wording of the statute, it would be possible for the County Commissioners to arbitrarily create districts to make improvements, imposing the expense thereof upon taxpayers and their property, even though the same might be entirely impractical and might be opposed by the great majority of taxpayers in the district. Thus the right to protest would be an empty privilege if the project is to go forward in any event.

It may be argued that the Commission's duty to discontinue the project is fairly implied from the language in Section 14 that, "the board of county commissioners shall * * * hear all objections to the creation of the proposed district." But this is not stated, nor is there any indication as to what proportion of the taxpayers would have to object. To give these taxpayers an opportunity to effectively voice their will and protect their rights, the statute should provide for an election, or at least that in the event a majority of the taxpayers objected, the project should not go forward.[2] Further, the purported limitations as to when suits may be brought are unreasonable and undoubtedly would be held invalid. These matters are pointed out because I have qualms as to the propriety of proceedings which could be taken under a literal application of these statutes and apprehension that the court's opinion might be construed as giving approval thereto. However, in view of the waivers signed and filed in the instant case, I think it is not necessary to adjudicate the point here. As to other points raised by the plaintiff, I am in accord with their treatment in the main opinion.

HENRIOD, Justice (dissenting).

I dissent, among other things, for reasons stated in the dissent in Barlow v. Clearfield City Corp.[1]

I also disagree with the main opinion's conclusion that the property owners in this case are the primary debtors. The statute[2] clearly states that *"the board of county commissioners may issue* negotiable interest-

1. Sec. 17–7–14, U.C.A.1953—Supplement.
2. Cf. Bigler v. Greenwood, 123 Utah 60, 254 P.2d 843.

1. 1954, 1 Utah 2d 419, 268 P.2d 682.
2. Sec. 17–7–21, U.C.A.1953 as amended.

bearing bonds" and "the bonds *shall be signed by the chairman of the board of county commissioners,*" and "*shall be attested by the clerk thereof under the seal of the board.*" This is an obligation of the county.

In addition to the quoted language, other statutory interdictions clearly say that the land shall be security for the payment of the bonds, indicating that the county is the primary obligor and the landowners some sort of psuedo sureties.

The generalities of the main opinion do not answer this question: "Who would be required to pay the bonds if the land involved became worthless by virtue of flood, earthquake, other acts of God or by destruction through enemy action?" In such event, if the county ultimately would have to pay the obligation represented by the bonds, as it appears it would, the statute clearly would be unconstitutional.[3]

From the briefs, the arguments and the circumstances surrounding this case, it would appear that legal counsel for prospective purchasers of the bonds suggested the procurement of a decision of this court as an insurance policy against any loss of risk capital and to assure a guaranteed profitable return on such risk capital. Someone certainly considered that nine constitutional conundrums had been posed by the legislation, (including the objection voiced in

this dissent) as evinced by the nine assignments of error. I think the case should be resolved solely on the ground that the legislation is in violation of Art. XIV, Section 3, of the Utah Constitution relating to debt limitations.

3. Art. XIV, Sec. 3, Utah Constitution.